Joel **SHERMAN** d/b/a Sherman's Liquors, Plaintiff,

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant.**

**No. AMD 95–1638.**

United States District Court, D. Maryland.

July 12, 1996.

Barton J. Sidle, Towson, MD, for plaintiff.

Lynne A. Battaglia, Office of the United States Attorney, Charles Bailey, Baltimore, MD, Jordan S. Fried, Office of the Attorney General, Federal Emergency Management Agency, Washington, DC, for defendant.

## MEMORANDUM

DAVIS, District Judge.

■ This action arises under the commercial crime insurance provisions of the National Insurance Development Program created by Congress in the National Housing Act of 1970, as amended, 12 U.S.C. §§ 1749bbb *et seq.* Jurisdiction lies under 12 U.S.C. § 1749bbb–11(b)(2) and 28 U.S.C. § 1331. The plaintiff/insured is Joel Sherman ("Sherman"), the owner and operator of Sherman's Liquors, a small grocery/liquor store located in Baltimore. The defendant is James L. Witt, Director of the Federal Emergency Management Agency ("FEMA").[1] Sherman seeks to recover from FEMA approximately $15,000, the amount he alleges he lost as a result of two armed robberies at his establishment. FEMA refused to pay the claim because the record-keeping at Sherman's "mom and pop" operation made it difficult, if not impossible, to verify the amount of the loss. Pending before this Court is FEMA's motion for summary judgment. No hearing is necessary. For the reasons that follow, I am constrained to the view that, while Sherman did indeed suffer a compensable, insured loss as a result of robberies at his store, a factfinder would have to engage in impermissible speculation to fix the amount of that loss. Accordingly, FEMA's insistence that Sherman's failure to document his cash handling procedures and his inventory vitiates its obligation to pay the claim must be left undisturbed, and its motion for summary judgment shall be granted.

1. The Director of FEMA has delegated administration of the National Crime Insurance Program to the Federal Insurance Administration. For ease of reference, I shall refer to the government insurer as FEMA. Regulations may be found at 44 C.F.R. § 80.1 *et seq.*

2. In view of my resolution of the record-keeping issue, I need not address FEMA's contention that Sherman misrepresented the nature of his store.

(i)

On June 29, 1994, Sherman obtained robbery insurance from FEMA under the government program. On his application Sherman indicated that he owned a retail liquor store and failed to advise FEMA of his check cashing operations, apparently because he considered the check cashing a "sideline," and also because he described his store as a liquor store in his tax filings.[2] On July 13, 1994, two armed bandits robbed him at the store, and Sherman alleges he incurred a loss in the amount of $9,285, most of it in cash. On the following day, July 14, 1994, the bandits returned and made away with $5,150, again with the bulk of the loss in cash.[3] Sherman maintained large amounts of cash in order to conduct his check cashing business.

Sherman filed a claim and requested payment from FEMA in accordance with the terms of his commercial crime insurance policy. On July 26, 1994, an independent adjuster retained by FEMA indicated that "it was likely" that Sherman was robbed of the amount he claimed. This adjuster recommended that FEMA pay Sherman's claim. However, FEMA refused to pay the claim because Sherman had failed adequately to document his losses. Sherman attempted to satisfy FEMA's demand for documentation, but was again rebuffed. Thereafter, more substantial documents, including bank statements and the like, were produced, and FEMA retained an accounting firm to conduct a review. Ultimately, on the recommendation of that firm, FEMA issued a final decision disallowing Sherman's claim. This suit followed.

(ii)

The conditions of the program under which Sherman obtained his crime insurance mandate that "the insured shall keep records of

3. The summary judgment record establishes rather clearly that in fact the robberies occurred. Although FEMA has expressed skepticism over the timing of the robberies, there is no suggestion that Sherman has perpetrated a fraud.

all the insured property in such a manner that [FEMA] can accurately determine therefrom the amount of the loss, and if the insured maintains cash funds for the purpose of check cashing, a complete record of each check negotiated shall be kept by the insured...." 44 C.F.R. § 83.26(b). FEMA contends that Sherman did not comply with these record-keeping provisions, and that it cannot verify the amount of loss suffered by Sherman. In support of its argument that Sherman's record-keeping was inadequate FEMA points to an admission by Sherman that "I do not keep in a ledger the amount of money I bring in each day to the store. However, be assured that I am aware of exactly how much cash I do bring to the store each day." Hence, even Sherman could not use his own records to provide an accurate account of his losses, but sought to have FEMA accept his good faith effort at recollection as to how much cash and property the robbers appropriated.[4] Significantly, Sherman's own expert was also unable to verify the amount of the claim after reviewing Sherman's records, stating "I was never able to determine the amount of available cash on hand at the time these robberies occurred."

Thus, in this case, the uncontroverted evidence reveals that Sherman failed to meet his contractual obligation to maintain "records of all insured property in such manner that [FEMA] can accurately determine therefrom the amount of the loss." 44 C.F.R. § 83.26(b). Courts that have decided cases with facts similar to those presented here have refused to disturb FEMA's decision to deny an insured's claim. In *Victoria Camera, Inc. v. Guiffrida,* 566 F.Supp. 796 (S.D.N.Y.1983), an insured sued FEMA after FEMA refused to pay its claims. The plaintiff's accountant testified that he "merely estimated the level of plaintiff's inventory." *Id.* at 798. The court observed that "[t]his form of speculation is inadequate to allow the plaintiff to satisfy its burden of proof." *Id.*

at 799. In *Garden Cafe, Inc. v. Federal Crime Insurance Program,* 1984 Fire & Casualty Cases (CCH) 314 (N.D.Ohio 1984), the court held that although the plaintiff's bank statements provided some record of its check cashing activity, those statements were "insufficient because they provide no indication as to the actual amount of money and checks on the premises at any given time." *Id.* at 316.

The same reasoning applies here. Although it is likely that the culprits stole a substantial amount of cash from Sherman's store during the two robberies, his failure to maintain adequate records makes it impossible to determine exactly how much money (or property) was stolen. The indisputable purpose of FEMA's record-keeping requirements is to make available verifiable proof that a specific loss in fact occurred. When verifiable proof is not available because the insured failed to comply with the record-keeping requirements, FEMA need not pay such claims.

Sherman relies principally on the fact that the independent adjuster initially hired by FEMA to investigate the loss determined that "it was likely" that Sherman was robbed of the cash and property forming the basis for Sherman's claim and recommended payment. Sherman argues that the investigator's statements prove that he has complied with the record-keeping requirements. This argument is flawed. The independent adjuster does not represent FEMA and his statements cannot bind FEMA, *Yonker v. Guifrida,* 581 F.Supp. 1243, 1245 (S.D.W.V. 1984); *Havemeyer Textile v. Federal Insurance Administrator,* 559 F.Supp. 956, 960 (E.D.N.Y.1983)[5], or raise an estoppel. *Wagner v. Director, FEMA,* 847 F.2d 515, 519 (9th Cir.1988). *See* 44 C.F.R. § 83.26.[6]

(iii)

Courts have uniformly held that in order to "maintain[ ] an action against a federal

---

4. When asked on deposition, "do you keep a ledger of how much you earned from liquor sales?" Sherman answered "No." Sherm.Dep. at 111. Sherman also admitted that he did not keep "an exact ledger" of his grocery sales. *Id.*

5. The adjuster's report demonstrates that he did not have authority to settle the claim.

6. Sherman's argument that the terms of the insurance policy are ambiguous lack merit and need not be addressed herein.

agency on an insurance policy there must be strict compliance with the terms of the government issued insurance policy." *Friends First Jewelry Corp. v. Giuffrida,* 587 F.Supp. 1018, 1020 (S.D.N.Y.1984); *Nyasco Sports, Inc. v. Director, FEMA,* 561 F.Supp. 864, 870 (S.D.N.Y.1983). Here, the conditions applicable to Sherman's insurance policy mandate in plain terms that "the insured shall keep records of all the insured property in such a manner that [FEMA] can accurately determine therefrom the amount of the loss, and if the insured maintains cash funds for the purpose of check cashing, a complete record of each check negotiated shall be kept by the insured...." 44 C.F.R. § 83.26(b). Sherman has failed to present facts sufficient to show that he has complied with the record-keeping requirements of the policy. It is not enough to show, as has Sherman, merely that a loss was suffered. Neither FEMA nor a factfinder at trial is required (or allowed) to engage in guesswork to determine the exact amount of the loss, or to assume that some minimum or "conservative" estimate of the loss is compensable. More than that is required. Accordingly, summary judgment is appropriate, and shall be granted by separate order entered herewith.